THE BERKELEY.

DEAS v. THE BERKELEY.

(District Court, E. D. South Carolina. November 18, 1893.)

1. ADMIRALTY—PROCEEDINGS IN REM—VOID PROCESS.
    A warrant of arrest for seaman's wages, issued by the clerk in the absence of the judge, contrary to the provision of a rule of court, is void.

2. SAME—VOID PROCESS—WAIVER—RELEASE BOND.
    Where a release bond is given after seizure of a vessel under an invalid warrant of arrest, the claimant being then ignorant of such invalidity, the recital in such bond that the claimant and his surety personally appeared, and submitted themselves to the jurisdiction of the court, is not a waiver of the illegality, and does not operate as an appearance to the suit, and any proceedings founded thereon are coram non judice. The Orpheus, 3 Ware, 145, followed.

In Admiralty. Libel by George Deas against the steam tug Berkeley for seaman's wages. On motion to vacate a decree. Granted.

C. B. Northrop, for libelant.
Ficken & Hughes, for respondent.

SIMONTON, District Judge. This is a motion to set aside a decree in admiralty. On 18th August, 1893, the libel was filed for seaman's wages, and a warrant of arrest asked for. By the rule of this court, (rule 9,) process in rem may be issued without a mandate of the judge, except in foreign attachment or in suits for seaman's wages. The judge was absent from Charleston, holding the court at Greenville, when this libel was filed. The clerk issued the warrant himself under the seal of the court, without the mandate of the judge. The marshal served the warrant, and arrested the vessel. In an hour or two after the arrest, the master and claimant went to the marshal, and, with J. F. Hernholm as surety, en-

tered into a stipulation in the sum of $100, under Rev. St. § 941. This stipulation ran in these words: "Personally appeared [the claimant and his surety, naming them,] who, submitting themselves to the jurisdiction of this court, bind and oblige themselves," etc. No formal appearance was entered, and no defense was put in. No advertisement of the vessel was made. On 17th October, 1893, proclamation was made, the respondent was found in default, decree was entered, and reference had to the clerk to ascertain the amount. His report was confirmed 26th October, 1893, and execution granted against the stipulators. They come in, and move to vacate the decree and all proceedings in the cause upon the ground that no warrant of arrest was legally issued, and upon the further ground that no advertisement was made, under rule 9, prescribed by the supreme court in admiralty.

There can be no doubt that the warrant of arrest was issued without authority. The rule expressly excepts cases for seaman's wages, when it allows a warrant to go without the mandate of the judge. This rule is founded on excellent reasons and sound policy. It is in close analogy with section 4546, Rev. St., which provides for a prior examination by the judge into a claim for seaman's wages. The question is, has the respondent not waived this objection by entering into the stipulation? It is not essential to the validity of a stipulation of this sort that the vessel should be actually in arrest. The language of the section, 941, shows this: "The marshal shall stay the execution of the warrant or discharge the property arrested if process shall have been levied" on receiving the stipulation. Judge Benedict, in The Roslyn and Midland, 9 Ben. 129, says it is a common practice, adopted for convenience and the saving of expense, to give a stipulation to secure a debt upon simple notice of the filing of the libel. A stipulation given under such circumstances is valid, although the vessel is not, and never was, in custody. Indeed, admiralty favors the stipulation. It serves all the purposes of security, and lets the vessel go free, fulfilling the purpose for which she was built; otherwise, she would lie idle at the wharf. But this is not precisely the case here. Respondents did not enter into the stipulation voluntarily on hearing of the libel filed, or to save expense. They stipulated because of the arrest, and to be free from it. The action was based on the belief that the warrant was good, and, as it bore the seal of the court, they had every reason to think so. The defect, the absence of the mandate of the judge, was not known to them, could not have been discovered by them on an inspection of the warrant, was probably not known to the marshal, and was known only to the clerk who affixed the seal of the court. Besides this, the judge was absent, was out of reach for several days, and the business of the steamer was interrupted. Under these circumstances, they entered into the stipulation. In this instrument they submit themselves to the jurisdiction of the court. The office of the stipulation is to release the vessel by substituting security in its place. Henry, Adm. Jur. & Proc. § 129. The bond stands for the vessel,—is instead of the res. The Fidelity, 16 Blatchf. 569.

But, says this case, the giving such stipulation to obtain a release of the vessel is not a waiver of any questions as to the original liability of the vessel. It only takes the place of the vessel for all the purposes of trial. But, while this is the law with regard to a defense on the merits, does not the stipulation amount to a submission to the jurisdiction of the court, and consequently to a waiver of all preceding objections? When we consider that such a conclusion would go far to destroy the very purpose of the stipulation, and that one claiming a maritime lien could wait until the last moment, and then, without lawful process, seize a vessel on the point of departing on her voyage, and so, from necessity, force her to stipulate, and thus make good invalid process, the argument ab inconvenienti would in such case have great force. The Monte A., 12 Fed. 332, seems to be an authority for the position that the stipulation has not that effect. Process in rem had been issued against a vessel, and stipulation entered into. The libel was dismissed for want of jurisdiction,—the nonexistence of a maritime lien. Judge Brown adds: "As the vessel cannot be held, the sureties in the bond executed for her release, which stands merely as a substitute for the vessel, are also, necessarily, discharged." The owner, however, although a nonresident, appeared generally in the action, and contested the liability on the merits, without taking any exception to the form of the remedy, as he might and should have done at the commencement of the action. A decree was sought against him. After stating the rule that, in actions at law and actions in personam in admiralty, a general appearance cures any irregularities in the service of process, or even the want of any service, and showing that even in such actions, where the defendant's person or property has been arrested or attached irregularly, defendant may, by a special appearance, avoid committing himself to the jurisdiction, the learned judge adds: "But an action purely in rem is itself limited to a proceeding against the res, and a general appearance in such action should, it seems to me, be deemed no more general than the limited nature and scope of the action itself, and of no greater effect than a special appearance to vacate an unauthorized arrest or attachment upon a general suit in personam." In the present case the claimant entered no appearance, and judgment was had by default. His submission in the stipulation surely can have no greater effect than a general appearance would have had. In The Orpheus, 3 Ware, 145, this question was discussed: "It is further contended that whatever objection there may have originally been to the jurisdiction has been waived by the claimant's stipulation, by which he submitted to the jurisdiction,"—saying that, if this stipulation had been purely voluntary, it might perhaps be taken as a waiver of any other objection, as the subject-matter was clearly within the jurisdiction of the court, "but, with a consent extorted by duress, it may be otherwise." Then showing that under the circumstances of the case, the arrest of the ship, the danger of the voyage being broken up, the entry into the stipulation as the only means of liberating the vessel and saving the owner from heavy loss, he concludes that the stipulation was not

the voluntary act of the claimant,—so far voluntary, at least, as to deprive him of the right of objecting to its legality. "The clause in the stipulation by which the party submits to the jurisdiction of the court seems to be taken from the stipulation entered into in libels in personam, in judicio sistendi, or answering to the action, and I think should be held to have the same force and meaning as in that. That required the promisor to remain in court, and submit himself to its jurisdiction, so far as he was subject to it when the suit commenced; no further. If, after the service of the process, he acquired a new right of declining the former, that was waived. But it did not deprive him of any right of defense he had when the process was served. The object was to preserve the authority of the court as it then was, and not to enlarge it. Any right which the claimant had of objecting to the jurisdiction of the court when the stipulation was entered into, he still retains." I am of the opinion that the original process in this case was void, and so continued notwithstanding the stipulation; that, as all the subsequent proceedings depended on this process, they were coram non judice.

Let the warrant of arrest issue on the libel as filed.